## J. M. ANDERSON v. W. H. STEWART, ADM'R.

Where the husband died in 1844, leaving a wife in Ohio and one in Texas, and a will whereby he assumed to dispose of all the community property to his wife in Texas and his children in certain proportions, and the will was probated same year, and administration continued ever since, it was held that an action brought by the assignee of the widow in Ohio, in 1852, in the District Court, for partition to him of one-half of the community property, remaining after the payment of the debts against it, was barred by limitation.

Appeal from Gonzales. It appeared from the plaintiff's petition that he claimed as the assignee of a former wife of Joseph D. Clements, whom he abandoned in Ohio. The petition alleged no divorce, and the second wife had full notice, &c. A demurrer was sustained to the plaintiff's petition. The other facts appear from the Opinion.

*J. Ireland,* for appellant.

*Stewart & Mills,* for appellee.

LIPSCOMB, J. The original petition, the amendment and vouchers made part of the petition, present the following facts: that the said J. D. Clements made his last will and testament which is as follows:

"REPUBLIC OF TEXAS, } I, Joseph D. Clements, of the county
   "*Gonzales County.* } and Republic aforesaid, being sick
"and weak in body, but of sound mind, memory and under-
"standing, and considering the certainty of death and the un-
"certainty of the time thereof, and to the end that I may be
"better prepared to leave this world, do therefore make and
"declare this my last will and testament, in manner following,
"that is to say, 1st. I constitute and appoint Edward Dickin-
"son and Augustus Jones executors of my will. 2nd. I will
"and bequeath to my wife Rachael Clements and my daughter
"Louisa Jane Clements and my two sons Alexander, Isaac
"Baker Clements, my plantation on which I now live, known
"as league, No. —, lying on the Guadalupe river, about twelve
"miles above the town of Gonzales, on the east side of the said
"river, that is to say, all that portion of the said league which
"lies west of a creek which runs near the east line of the said
"league and the first creek west of John King, be the same
"more or less, which land is to be kept by my said wife for
"the purpose of rearing and educating my said children; and
"further my said wife is now pregnant, and, from the course
"of nature, must soon bring forth another child; should that
"be the case, that child, if living, is to be entitled to an
"equal support, and equal share in the before described pro-
"perty when my youngest child comes of age, that is to say
"twenty-one years old; then and in that case, the before de-
"scribed land is to be equally divided between my said wife
"and the aforesaid children, but should any of my aforesaid
"children die before they arrive at the age of twenty-one, their
"interest or share of said land is to go to the remaining chil-
"dren in equal proportion, to-wit: my children before described.
"3rd. I do bequeath to my said wife and the children before

" described all my personal estate, including a negro boy called " Willis, to be held and enjoyed by them in like manner with " the land before described, and to be divided in like manner " when the youngest child comes of age, except so much as will "pay my funeral expenses, and the cost of getting out letters " of administration, for which expenses my executors are au- "thorized to sell a portion of my personal estate. 4th. It is " my will that my executors proceed to sell any of my remain- "ing lands according to law for the purpose of paying all my " honest and just debts. 5th. Should there be any lands left " after paying my debts, it is my wish and desire that my three " sons, which now reside in the State of Indiana, one of the " United States, to-wit: William Ferguson, Joseph D. and " John Adonis Clements, shall have alotted to them each one- "fourth of a league of land, should there be that much left " after paying my said debts, but should there not be that much " left after paying my debts, whatever is left to be divided " equally among them ; but should there be more than the said " one-fourth of a league, each herein bequeathed to my said " three last named sons, then and in that case it is my wish and " desire that my said executors sell the remainder and divide " the net proceeds between all my children equally, that is to " say between my first named children and the three last." Dated 28th March, 1844.

This will was duly probated on the 8th day of April, 1844, and recorded. The executors qualified under it and proceeded to administer the estate, by carrying out the directions of the will. One of them resigned, and the other died, and Stewart was appointed administrator, with the will annexed, who pro- ceeded to administer the estate. The suit was commenced by Anderson who claims to have purchased from Mary Clements, residing in the State of Ohio, and it is alleged that she is the lawful widow of the said Clements, having been married to him in Ohio in one thousand eight hundred seven and never was divorced from him. Her vendee, the plaintiff, claims one-half

the property that Clements died possessed of, after paying the community debt, as her community share. The suit was commenced on the 14th June, 1852, and amended 25th April, 1854. There was a demurrer to the petition, on the ground of the non claim within four years and the statute of limitations.

The 3rd Section of the Act of 5th February, 1840, (Hart. Dig. Art. 997,) after directing how a will shall be probated, has this proviso, " But any person interested in the will may, " within four years afterwards, require it to be proved in sol- " emn form, or contest its validity before the Probate Court, " and the final judgment thereon given shall be conclusive ; " provided infants, *feme coverts* and persons *non compos mentis,* " shall have the like period after the removal of their respec- " tive disabilities." If the wife, whose interest is represented by the plaintiff, has any interest in the question of the validity of the will of Joseph D. Clements, whom she claims to have been her lawful husband, that interest is certainly barred by the limitation cited. (See Ingram v. The Devisees of Ira Ingram, 2 Tex. R. 590.)

But it is said that the plaintiff has no interest in the will, and does not claim under the will, but is a stranger to it and not required to know what its contents are. It may well be questioned if the appellant can be so regarded. There is certainly an interest in the estate, because that the whole goes into the hands of the executor or administrator in trust, it is true, for the payment of all the community debts, and then the balance to be divided, the one-half to the heirs of the deceased and the other to the survivor. If the will has directed the debts to be paid in a way prejudiced to the community interest and not according to the law of community, she, the widow, would be interested in having the invalidity of the will estab- lished. She does not claim under the will, it is true, but it is not necessary that a party contesting the validity should claim under it. It is not because she claims under the will, that she has the right to contest its validity ; that would be absurd ;

but it is because the will has interfered with her rights, that she can claim to have it invalidated. Ingram, in the case cited from 2 Tex. R., did not claim under the will, but in opposition to it, and it was ruled that he was barred his right to contest the will, by the law of limitation.

She is interested in having the will invalidated, in another way. This will assumes to dispose of the whole of the estate of J. D. Clements as though it was all his separate property and not community. If she, under such circumstances, acquiesced in the will, after probate, beyond the term of four years, it seems that she would be precluded from contesting the validity of the will, and the disposition of the property made under it. It is believed that after its probate, it is to be regarded as a will, until it has been set aside by proceedings having that object directly in view. We cannot regard the widow claiming a community interest in the property of the estate, because that her right is dependent upon the fact that the property out of which she claims a community must be shown to have been acquired by the parties during the coverture, and not by the separate means of one of them.

But, suppose it should be conceded that the widow was not bound to contest the validity of the will within four years; can she be benefitted by the concession? The most favorable aspect in which her rights can be placed, is, to regard her community interest as in trust in the hands of the administrator, who, after the payment of all the community debts, would then be ready to set apart the widow's share ; the administrator may be regarded in the meantime as a trustee holding for the widow's benefit, and as such he would be regarded, unless he repudiated the trust and asserted his possession to be adverse to her rights, such as denying that there was any community property, and that he was administering upon it as such. The statute of limitation would commence running from the time of such adverse possession. If this adverse possession was by a notorious act, no actual notice would be required. This is

the doctrine of the case of Winburn's Ex'ors v. Cochran, 9 Tex. R. 123; the slave had been originally loaned to the testator's wife, and continued in the common possession of her and her husband until the death of the husband; the wife and another were made executors, qualified and inventoried the slave as a part of the estate of the deceased husband; it was ruled that from the date of the record of the inventory, the possession was adverse and the Statute commenced running. This doctrine is familiar to the Court; it was recognized in Cordova, Adm'r, v. Smith, 9 Tex. R. 129; Turner v. Mebane, 10 Id. 246. In the last case cited, the doctrine was thoroughly discussed on principle, and the authorities reviewed on the subject. It was again examined with some care and labor in the case of Wingate v. Wingate, 11 Tex. R. 430. In the case of George Clymer v. Dawkins and others, 3 Howard, U. S., 674, in the Supreme Court of the United States, Judge Story delivering the opinion of the Court, it was decided that the entry and possession of one tenant in common is ordinarily deemed the entry and possession of all the tenants, and this presumption will prevail in favor of all, until some notorious act of ouster or adverse possession by the party so entering is brought home to knowledge or notice of the others. When this occurs, the possession is from that period treated as adverse to the other tenants. Such a notorious ouster or adverse possession may be by an overt act *in pais*, of which the other tenants have due notice, or the assertion in any proceeding at law of a several and distinct claim or title. If an attempt be made to obtain a partition, although the legal proceedings by which it is effected may be invalid or defective, still being a matter of public notoriety, the co-tenant is bound at his peril to take notice of the adverse possession thus set up.

We will see how far the facts of this case come within the principles discussed and the cases cited. We set out the will at length in our statement of the case, for the purpose of showing that it assumed to dispose of the whole of the property, and that in so doing it repudiated the claim of the plaintiff,

as it was wholly inconsistent with any such right. The probate of the will, and the taking possession by the executors, and proceeding to act in their administration, under its direction, was adverse possession ; and it being by a proceeding in legal form, was, according to the decision in 3rd Howard, and in Winburn's Ex'or v. Cochran, 9 Tex., was such an adverse possession as the plaintiff was bound at her peril to take notice of. · We believe that the Statute of Limitations commenced running from the date of the probate of the will, by the executors. The will was probated on the 8th April, 1844, and the suit was commenced on the 14th June, 1852, something more than eight years from the adverse possession when the Statute commenced running, more than enough to complete the bar. The judgment is affirmed.

Judgment affirmed.