R. S. BROWN, Adm'r, *et al.* v. WM. BROWN *et al.*

LIMITATIONS, STATUTE OF. *Wills. Possession.* Devisees and legatees under a will duly proved and recorded in common form, who go into possession of the real and personal property devised and bequeathed to them, will have their title perfected by the statutes of limitations, although the will be afterwards set aside upon an issue of *devisavit vel non,* and the possession of a tenant for life under the will inures to the benefit of the remainderman.

FROM BEDFORD.

Appeal from the Chancery Court at Shelbyville. J. W. BURTON, Ch.

J. A. WARDER and H. L. DAVIDSON for complainants.

EDMOND COOPER for defendants.

COOPER, J., delivered the opinion of the court.

Benjamin Brown died in 1857. An instrument in writing, purporting to be his will, was duly proved as such in common form by the persons named as executors therein, who qualified accordingly. The estate was settled by the executors, and the property turned over to the persons named as devisees and legatees after the payment of debts. The settlement was completed by the year 1860. In 1869, upon petition of parties interested, an issue was made to contest the validity of the will upon the ground that the deceased was induced to execute it by the undue influ-

ence of his wife. Upon the trial the jury found that the execution was procured by the undue influence of the wife, and a judgment was rendered that the instrument was not the last will and testament of the deceased. The judgment was affirmed by this court in 1873. Shortly afterwards R. S. Brown was appointed administrator of the decedent's estate. Thereupon he and some of the heirs and distributees of the deceased filed this bill against the other heirs and distributees, and the persons made devisees and legatees, under the supposed will, to recover the property, real and personal, received by the latter under the will. These parties plead and rely on the statute of limitations in bar of the action. The chancellor rendered a decree from which no appeal was taken. Two of the heirs and distributees have brought the case up by writ of error.

The heirs of the deceased, notwithstanding the probate of the will in common form, might have sued at law for the land, and in that suit contested the validity of the will: *Weatherhead* v. *Sewell*, 9 Hum., 280; *Smith* v. *Neilson*, 13 Lea, 461. Having the right to sue, and having failed to do so for more than seven years, during which time the defendants were in the continuous adverse possession of the land, the right of action would ordinarily be barred, and the title of the claimants be vested in the defendants: Code, sec. 2763.

Part of the realty was devised to the widow of the deceased for life with remainder in fee to other defendants. The contention is, as to that property,

that the possession of the tenant for life would only
inure to her benefit, not to the benefit of the re-
maindermen. But they all claim under the same in-
strument, which undertakes to convey the entire fee
in the land, and the devise is an assurance of title
purporting to convey an estate in fee within the mean-
ing of the Code, sec. 2763. The interests of the
tenant for life and in remainder constitute one estate,
the two, when added together, being equal to an estate
in fee. "They are indeed different parts, but they
constitute only one whole": 2 Black. Com., 164. The
possession under the section of the Code cited need
not be by the owner of the fee in person. It may
be by a tenant for life, for years, or at will: *Crad-
dock* v. *Stalcup*, 1 Tenn., 351; *Ross* v. *Cobb*, 9 Yer.,
463. Or by an overseer or agent: *Jones* v. *Perry*,
10 Yer., 59, 81; *Hammett* v. *Blount*, 1 Swan, 385;
*Waddle* v. *Stuart*, 4 Sneed, 535. And by successive
tenants: *Sims* v. *Eastland*, 3 Head, 368. The pos-
session of several successive privies in estate is good:
*Marr* v. *Gilliam*, 1 Cold., 489. And the possession
of one tenant in common will inure in favor of other
tenants in common not in possession: *Hubbard* v.
*Wood*, 1 Sneed, 279. A life tenant is a privy in
estate with the remaindermen in fee, and represents
the latter for all purposes touching the common estate:
*Freeman* v. *Freeman*, 9 Heis., 301; *Parker* v. *Peters*,
3 Leg. Rep., 12. His possession is necessarily the
possession of those having the other interests carved
out of the fee by the assurance of title under which
he holds. And so this court has said: "that where

a legacy is limited to several persons in succession, the executor's assent to the first taker will be considered an assent to those who are to succeed in remainder, because the several interests constitute but one entire estate: *Finch* v. *Rogers,* 11 Hum., 559, 564. If the law were otherwise, in the very common conveyance of land to a mother for life, and then to her children, the possession of the mother would only inure to her benefit, although her children might be living with her, for her possession would, of course, be exclusive during her life: Since the foregoing argument was written, the position contended for has been expressly held by the Supreme Court of Maryland in *Hanson* v. *Johnson,* 31 Alb. Law. J., 91.

The case of *Stevens* v. *Bomar,* 9 Hum., 546, is not in conflict with this view. There the conveyance of the negroes was to a daughter of W. T. Richardson, "and her heirs forever," in trust for her mother, the wife of Richardson, during her life, and then to go to the trustee and such other children the mother might bear. The conveyance was executed in North Carolina, and was, by a statute of that State, void for want of registration. The court was of opinion that the trusts of the deed were as absolutely void as if created by a parol gift, and said that the possession of the slaves by the father, if held in conformity with the deed, might vest, not a title in the mother, the life tenant, but "the absolute title" in the trustee. "It cannot be said," the court add: "that the possession of a party actually holding a slave is the possession of another person in remainder in

whom no estate in remainder has been created." The decision turns upon the fact that the court treated the trusts as void, and fairly implies that if the remainder had been valid the possession might have inured to its benefit.

A remainderman is not bound by a judgment in ejectment against the tenant for life, neither is the owner of land by a judgment against his tenant, and for the same reason the possession and title or interest of the defendant being alone involved.

The time of the bar of the recovery of personal property is three years, and of a money demand six years. These periods having elapsed before suit brought in the present case, the statute of limitations would *prima facie* be a good defense. The ground relied on to prevent the bar of the statute is, that there was no person to bring suit until the administrator was appointed after the will was set aside, and that the statute would not begin to run until there was a person capable of suing. The point is one of difficulty, on which there is a singular dearth of authority, although all which have been found, including one case of our own, are against the defense. The probate of a will of personalty, it seems to be now well settled, is conclusive, if the court had jurisdiction as to its testamentary character, the capacity of the testator, and as to all questions of fraud, imposition, and undue influence, until set aside in the mode prescribed by law: *Williams, ex parte,* 1 Lea, 529; Code, secs. 2169, 2173; *Williams, executors,* 490; Jarman on Wills, 27 (Big. ed.); *Clark* v. *Fisher,* 1

Paige, 176; 3 Red. on Wills, 57, 120. Like the adjudication of every other court of competent jurisdiction, the judgment would protect the purchasers of property under it, notwithstanding a subsequent reversal, unless the title can be impeached for fraud. The executor acting under it in good faith would be protected. It would seem to be equally clear that legatees under the will would acquire a good title at the time upon the assent of the executor to the legacy. The title would, of course, be under the will valid by virtue of the probate, and therefore not void, but voidable. The possession would be adverse to the personal representative of the deceased who, at the time, had the right to the property, and who by virtue of that right had turned it over to the legatee. Such a possession continued for the length of time necessary to perfect the voidable title, with a personal representative of the estate then in existence, would, according to all the analogies of the law, be a bar to any subsequent representative. It was so expressly ruled by this court in *Rogers* v. *Winton*, 2 Hum., 178, a case in principle identical with the one before us. It was decided by one of our ablest judges. "If," he says, "the statute of limitations is a bar, it operated before the issue of *devisavit vel non* was found against the will, and rights acquired cannot be divested by subsequent matter." The will was set aside, but a good title had already been acquired under it. If a person hold land for seven years under a fraudulent deed, would it be pretended that his title would be affected by a subsequent decree set-

ting aside the deed for fraud? And how can an administrator impeach a title forfeited under a previous personal representative whose appointment and acts were legal? The cases of *Price* v. *Nesbit,* 1 Hill Ch., 445, and *Anderson* v. *Stewart,* 15 Texas, 285, tend to sustain our own case.

The effect of so holding will be to limit the time within which an issue of *devisavit vel non* could be brought with any expectation of benefit. But there should be, and is in most of the States, a short limitation for the bringing of such an action. No harm is done by decisions which bring about the same result. And if the issue be made within the period of limitation for the recovery of the property, the law's delay in that suit would not be allowed to prejudice the parties upon a bill filed promptly to prevent that result.

Decree affirmed.

FREEMAN, J., delivered the following dissenting opinion.

In 1857, Benjamin Brown died in Bedford county, leaving, as was supposed, a last will and testament, of which Wisener and Brown were appointed executors. They proved the paper in common form, entered on the duties of their office, and proceeded very soon after to divide the money, assets and notes, amounting to about $30,000, among the five or six parties supposed to be entitled to the same under the will. Not long after this the real estate was partitioned, as we take it, by agreement of the parties,

among the devisees under the will, and as to all but
a small tract. The parties have been in possession,.
claiming, as is charged in the bill, and is proven, ac-
cording to the terms of the will. The estate was set-
tled entirely, we believe, in 1868, and so the admin-
istration closed.

In 1869, a contest was instituted to test the va-
lidity of the will on the ground that it was obtained
by the fraud or undue influence of the young wife,
who has since intermarried with defendant, Brenty.
This contest was finally ended in 1873, by a judg-
ment of this court affirming the invalidity of the will,
as found by the verdict of a jury.

Soon after this, R. S. Brown was appointed ad-
ministrator of Benjamin Brown, deceased, and this bill
was filed June 1, 1873, by him and other heirs and
distributees, to settle up the estate and assert a claim
to the property given and devised under the supposed
will. A decree was made by the chancellor in · which
all have acquiesced except two of the heirs and dis-
tributees, Alexander Rich and Emeline Ekes, who
prosecute this writ of error to reverse the same.

The case here turns on the question of the effect
of the statute of limitations of seven years as to the
realty, and of three and six years as to the personalty.
It is not questioned that the time has elapsed to per-
fect the bar of the statute in both cases, but this is
sought to be avoided on several grounds, which we
proceed to notice. First, it is claimed that the com-
plainants in error were either under the disability of
coverture or infancy during the period of possession by

respondents, and so continued up to and within three years before filing this bill, and certainly so up to the time of commencing the proceedings to contest the validity of the will.

The bill charges the facts to be, that at the death of Benjamin Brown, at the probate of the supposed will, at the time the parties took possession, at the division of the evidences of debt, and at the time the petition was filed to contest the validity of the will, Robert S. Brown, Eza Maupin and Alexander Rich, were minors, and at the time of filing the petition, Jane Maupin was under the disability of coverture, that at the death of Benjamin Brown, his granddaughter, Emeline Ekes, was under the disability of coverture, and so continued until the — day of ——, 187–, long after filing said petition.

Without quoting the averments of the answers, we need but say, that they substantially deny the facts in avoidance of the effect of time presented above, and insist on the statutes as a bar to the relief sought. This is done with some unnecessary circumlocution, but we have stated what is the fair result and purpose of the pleadings. Time sufficient to create the bar (nothing else being in the way), having elapsed, it devolves on the party to meet this by affirmative proof of the allegations bringing them within the exceptions of the statute, when the statute is interposed. There being no proof on the subject, the legal result from lapse of time must take its course.

We notice first the effect of the statute as to the realty, and questions raised in argument on this branch of the

case. It is urged that the will having been proven in common form, the law giving, in our State, at least twenty years in which it may be contested, the statute of limitations could rightly have no effect on the possession while the will remained undisturbed. The answer to this, it is argued, is found in the case of *Rodgers* v. *Winton*, 2 Hum., 180, in which it was stated to be the law by this court, that assuming the will was not a valid muniment of title, the same being set aside for invalidity, still if the statute had completed the bar before the issue *devisavit vel non* was found against the will, the rights acquired under the statute could not be divested by this subsequent matter.

It is to be noticed, however, the suit was brought to recover slaves bequeathed by a will, by an administrator *de bonis non* of the estate, the widow having been appointed administratrix with the will annexed, and having administered the estate as such. At that time it was held that an administrator represented the title to slaves, and was the proper party to sue for their recovery. This fact was not remarked upon by the court in the opinion, but with it the case raised the question of statute of limitation more definitely, as the administrator, independent of the will, on the theory of the opinion, had the right to sue for the property, and so time was running with a party in existence to sue. The court does state the rule, however, definitely, that the party holding under the will, as devisee (legatee) for the period prescribed, gets a good title by the statute, notwithstanding the will may afterwards, in a proper proceeding, be set aside as invalid.

Without any examination, however, of the principle on which it rests, this case has stood from the time delivered until now.

The argument is urged with much force and plausibility, that until the will was set aside, or at any rate until the probate set aside in the county court, the right to sue for the property did not arise to the heir, and that if the statute of limitations is permitted to operate in such a case, it will be in violation of the axiomatic principle of our jurisprudence on this subject, that the party cannot be affected until his right of action has arisen and a remedy in his hands for its enforcement. This argument would be unanswerable if the premise is correct, that is, that the heir could not sue by reason of the probate of the supposed will. In the case of real estate, however, the settled rule of the common law is, that a suit might be brought by the heir for the property, and in this suit, the will when presented as the evidence of the devisee's title be contested as on an issue of *devisavit vel non,* the general practice in England being to make up under the direction of the court an issue of *devisavit vel non* and try the validity of the will, and thus the question be settled. At common law, on such contest, it was necessary to produce, says Judge Turley, in the case of *Weatherhead* v. *Sewell,* 9 Hum., 280–1, the original will, and prove its execution by the subscribing witnesses.

This made it necessary for the claimant under the will to be always prepared to prove it whenever it became necessary to resort to it for his protection. To

obviate this the act of 1784, chapter 10, section 6, was passed, substantially carried into the Code, section 2197, *et seq.*, which provided, that "probate of wills in the county court shall be sufficient evidence of the devise of real estate, and attested copies be given in evidence in the same manner as originals, but where fraud was suggested to have been committed in the drawing or obtaining any last will, or any irregularity in the execution or attestation thereof, the party making such suggestion might insist upon the original will being produced to the court if the same could be found."

The English practice was distinctly recognized as law in this State in the above case, and the will contested regularly on the trial of an action of ejectment in that case. The court holds, that the only effect of the statute was to make the attested copy of the probated will stand in the place of the original as required at common law. The parties then stand precisely as if the original had been produced, and proven as at common law, and those claiming against the will would be put upon their defense to show that it was no will, or the party producing it took no interest under it. The provision of the statute, in case of fraud, was intended simply to enable those contesting it to have the original produced for inspection in court on the trial.

This being settled, it follows the heirs had a right to sue for the land at any time from the death of Benjamin Brown, certainly to sue these parties from the time they went into possession, in perhaps 1857,

and this right being clear, time might well begin to run, and having elapsed, their title is barred, so far as the land was actually held by claim of parties under the will to the extent of the boundaries as therein defined.    It has been so often settled, that a holding under a void or voidable instrument purporting to convey a fee simple, or even less estate, as required by the act of 1819, is as effective as if the instrument was not such, we need not cite authorities to sustain the proposition.

The will being voidable by contest in this case, therefore could not hinder the effectual operation of the statute in favor of the party in possession.    There may be an apparent or real incongruity in allowing a party to contest a will within twenty years, or even longer time, and yet permitting the title to be perfected by the ordinary statute of limitations in a less period, but this we cannot undertake to reconcile.    It is only our business to declare the law as we find it.    We cannot render it perfect, should we try, and need not attempt to reconcile all real or apparent incongruities.    A right of action existed, as we have shown, against the party in possession, and this is always held sufficient to start the statute and perfect the right in the possessor, when the prescribed time has elapsed.

This brings us to a question of more or less nicety, which has not been presented in the argument precisely as we apprehend it.    By the supposed will of Benjamin Brown only a life estate was given to his widow in a portion of his lands, and it is charged

in the bill, and shown by the proof, that she went into possession under this will, and claimed according to its terms, and it certainly does not appear she ever held or claimed anyhow else. The parties claiming the remainder interest have never been in possession at all.

On this state of facts it has been urged that the holding of the widow inured to the benefit of the remaindermen, and perfected their title as well as her own. This is sought to be sustained by the principle announced in the case of *Finch* v. *Rodgers,* 11 Hum., 563–4. But that case involved no such question as we have in this, nor does the principle announced have any application to realty. The only question was whether the assent of the executor was necessary, or had been given, to a legacy so as to perfect the title of the legatee. The court held such assent unnecessary in that case, because the property had been placed in possession of the legatee by the testator in his lifetime, and the after gift confirming the title, made the legatee hold directly under the will and not from the executor. The court add, "that it is well established that a person appointed executor may assent to a legacy before he approves the will, and having once assented he cannot retract his assent afterwards, unless, perhaps, the presentation of debts unknown at the time the assent was given should occasion a deficiency." The court then say: "And it is equally well settled that where a legacy is limited to several persons in succession, the executor's assent to the first taker will be considered an assent

Brown *v.* Brown.

to those who are to succeed in remainder, because the several interests constitute but one entire estate."

This is all settled law, but has no bearing, as far as we can see, on the question before us, that is, what is the character and extent of the holding of the party in possession? Can it operate in favor of parties not in possession, and for whom in fact she did not hold, but for herself, and the estate which she claimed, to that extent and no more, or does her holding reach out beyond her own purpose, and cover and include the estate of the remaindermen under the voidable muniment of title? It is obvious that the question of the assent of the executors in this or in any other case of real estate can have no weight in settling these questions. In fact they seem here, properly too, to have had nothing to do with the land, it having been partitioned between the parties, probably by agreement, and the widow going into or remaining in possession of her share, taking and holding under the will as the source and measure of her title and claim. The case really stands on the simple fact that a party has gone into possession under a voidable muniment of title, purporting to convey a life estate, with remainder over to third parties, that party holding for herself under said instrument until the instrument had been declared void and adverse to all others, the life estate not having fallen in, and the remaindermen never having been in possession at all. The assent of the executors could not affect this in any way for another reason. It is clear the parties claim under the will, and are compelled to

make out their title under the statute of limitations under our decisions, giving the benefit of the statute to parties in possession under a void instrument. If that instrument is abandoned, then there is nothing defining the limits of the possession or the extent of the title claimed, and they would have to stand on naked possession alone under the second section of the act of 1819—a purely defensive character—in which case they would be confined to their actual enclosures or occupation, and could not go beyond this. Their claim being directly under the will, the property being land, not assets, except *sub modo,* never going into the hands of the executor, their assent had nothing to do with the character of the holding.

But to the main question: What is the effect on the title of the remaindermen of the holding of the life tenant for more than seven years?

This question must be settled by an analysis of the principles settled by this court as to what is the nature of such possession, and by the sound analogies of the law.

The general rule settled in numerous cases in our State is, that where the nature of the property admits of it, the possession to be adverse, must be an actual possession. See cases cited Meigs' Dig., by Milliken, Vol. 3, sec. 1890.

It is further settled that to make adverse possession it must be accompanied by claim of right to property. It requires both actual possession and an intent to claim the property against the true owner to ren-

der the possession adverse: *Turner* v. *Turner*, 2 Sneed,. 31; Meigs' Dig., sec. 1890, sub-sec. 2.

When possession is thus taken under an instrument purporting to convey to the possessor, or vest him with a right to the land, then the possession is under that instrument, and the possession extends to the boundaries defined in the instrument. This is all well settled.

If the instrument or title purports to convey a fee simple, then seven years holding under such an instrument gives the absolute title to such holder as against all the world, except parties under the disabilities provided for by the statutes; that is, the holding vests and fixes the title according to the nature of the instrument under which the party claims. If the instrument does not purport to convey a fee as a title bond, then the adverse holding only gives a possessory right, and the fee is not obtained: Meigs' Dig., by Milliken, sec. 1907, and cases cited; *Elledge* v. *Cook*, 5 Lea, 623.

It follows that the amount of the estate defined in the instrument is that to which the adverse holding gives effect; in other words, the adverse possession inures to the benefit and completion of the title' as conveyed, or under which the holding is, whether in for a less estate, but in no case goes beyond this, or enlarges the estate of the party or title under which he claims.

Another view of this question will serve as an illustration of the conclusion indicated. Suppose there had been a disseizin of the life tenant, or the life

tenant had conveyed in fee, it would not be contended that the parties claiming under the will in remainder could have been affected in either case, nor would they have had the right to sue for the possession the trespasser in the first case, or the claimant under the conveyance in the second, until the termination of the life estate. Why? Because their possession has not been disturbed, nor any right of theirs intruded upon. Can it be that a possession in which the party has no legal interest whatever is silently working for him to perfect his title? Yet such would be the result of the contention of the parties claiming title in remainder in this case. Their claim is, that the possession of another whose estate is not theirs shall inure to perfect their title, though held for herself alone. They do not hold *under* her, but *after* her, and have no right to possession until her estate has expired.

The language of the act of 1819, sec. 1, as found in our Code, can only bear this construction. It is, " any person having by himself, or those through whom *he* claims seven years adverse possession of any lands, tenements or hereditaments granted by this State or the State of North Carolina, holding by conveyance, devise, grant, or other assurance of title purporting to convey in fee without any claim by action at law or in equity commenced within that time, and effectually prosecuted against *him*, is (*that he* is) vested with a good and indefeasible title in fee to the land described in *his* assurance of title."

The party who is to have this benefit is the party

Brown *v.* Brown.

having. possession, either by himself or those *through* whom he claims. It must be by an assurance of title purporting to give or convey an estate in fee— that is, to him who then holds. The effect of such holding is to vest *him*—that is, the party who has the conveyance or title purporting to convey to him a fee simple estate, an indefeasible title in *fee* to the land described. It is. too clear to doubt, from this language, that this effect is only given in favor of the party thus holding, and to whom a fee simple estate has been conveyed, or is by him held. It was, in other words, intended, as we know, to quiet titles when held under a claim such as is required by the statute, and fix them in the claimant, who had thus for. seven years held openly and notoriously in accord with the instrument under which his claim was made and holding had.

It is not, in this case, a case of priority of es- tate where one claims under another, takes from that other, but is the case of parties claiming separate estates in the same property—by the same instrument, it is true—possession to vest, after the termination of the first estate. Until such possession is taken, the latter is not holding adversely, and the rightful owner has no cause of action against his claim. He might,/ if he chose, disavow the possession of the life-tenant, or if the life-tenant chose to assert a claim in fee, it could have no effect on his rights, because his title is not dependent in any way upon the character of the holding of such life-tenant.

The case of *Bomar* v. *Stephens*, 9 Hum., 545, holds

the principle thus announced, and applies it in a stronger case than the one now before us. The syllabus of the case on this point is: "The statute of limitations can confer a title on *no one* except the person in adverse possession, and therefore, if the possession be held under a void deed of trust, the statute would vest the title in the trustee, but would not establish the limitations in remainder created by the deed."

The conveyance in that case was of negroes by a father and grandfather to his granddaughter, Rebecca Richardson, daughter of W. F. Richardson and his wife, Elizabeth, to her (that is the granddaughter) and her heirs forever, subject to the enjoyment of the service of the negroes during life by the daughter and mother, at her death to go to said Rebecca, the granddaughter, and such other children as Elizabeth might bear."

The husband and wife took possession, the wife thus having the life estate, and held for sufficient time to perfect the title under the statute. After this the husband sold the mother of the negroes sued for, the purchaser holding them for a number of years. The after born children of the mother, who took only a remainder interest, sued the purchaser for the property. It was conceded the original deed was void by statute of North Carolina for want of registration.

But it was contended for the remaindermen that even if this were so, yet the deed served to show the character of the father's holding, that his posses-

sion being in conformity to the provisions of the deed and adverse to the grantor, for more than three years, thereby vested the remaindermen, complainants, with a title according to the terms of the deed, by the statute of limitations.

The court say, however, this position is untenable. If Richardson held possession in conformity to the deed, it might vest the absolute title in the daughter, Rebecca, who was one of the original conveyees, but the trust of the deed, that is, the remainder in the after born children, would not thereby be established. "For if this were so, a man might by parol make a donation of personal property for life, stipulating certain trusts, and limiting it in remainder to others; and the trusts and remainder, though absolutely void at the time, would become effectual if the property were held three years in possession with the belief of the possessors that they were valid." The principle on which this conclusion rested is thus stated: "The statute of limitations can confer a title on *no one* but the person in adverse possession. That the possession of a father has been held to confer a title upon his infant child does not vary the principle, for being the natural guardian of his child, his possession is held to be the child's possession, and therefore the child acquires the title. But it cannot be said that the possession of a party actually holding a slave is the possession of another person in remainder in whom no estate in remainder has been created, that is, by valid conveyance. That the party shall say: "I hold this slave for myself during the life

18—VOL. 14.

of the mother, and then for myself and brothers and
sisters, will certainly confer on the brothers and sis-
ters no right whatever, because they were not in pos-
session."

We have quoted the above at length, because the
case furnishes an analogy covering the present one,
if not an identical case. The father held under an
instrument not valid, conveying a life estate to his
wife, remainder to the after born children. It was
held this possession did not inure to the benefit of
the remainder secured by the same instrument to the
after born children, that is, a possession by a tenant
for life did not perfect or fix a title to the remain-
derman, though held long enough to have done so.

It is true the judge speaks of establishing trusts
of a will in this way, but the real case was simply
a case of conveyance for life to the wife with re-
mainder to the living and unborn children, and hold-
ing by the life-tenant for the period of the statute
necessary to perfect the title, and it was held that
the possession of the life-tenant did not inure to per-
fect the estate of the remainderman. This is put
on the distinct ground that the statute only worked
to perfect the title of the party in possession, either
by himself or one holding the possession of the prop-
erty conveyed for him, as in case of a tenant hold-
ing for his landlord.

No distinction can be drawn between personal and
real property in this reference, as the life estate in
the latter case and the remainder make up but one
complete title to the whole property precisely as in

the case of realty; the two together serve to make up the full estate which we call a fee simple. This case decides the precise principle maintained in this opinion, and is conclusive of the result unless over-ruled.

The case in 3 Hum., *Rodgers* v. *Minton*, 178, does not in any way contravene this view, as there was no remainder interest in that case, and the question not only did not arise, but is not even alluded to in that case.

The cases in 9 Heis., 306, and *Gray* v. *Barnard*, 1 Tenn. Ch., have no bearing whatever on the question, only referring to the rule of equity pleading, that in case of partition it was held, as a matter of necessity, that to make the life-tenant a party was sufficient where the remaindermen had not come into being. No question of the statute of limitations is alluded to or discussed in any of these cases. Whatever may be the theories of the common law as to the life estate and remainder being but one estate, they can have no proper influence in construction of our statute of 1819.

By the very terms of the first section the estate is only perfected in fee simple to a party actually holding under a conveyance, devise, grant or other assurance of title, proof to convey to the party so holding, either by himself or tenant, the estate which is to be perfected in him.

The second section, Code, 2764–5, gives a defensive right in favor of any one holding seven years adversely where the true owner neglects to sue, and

the other clause forbids any person or any one claiming under him to have any action for lands, tenements or hereditaments but within seven years after his right of action accrues. These provisions, however, only perfect the defense in the party in accord with the estate claimed by him, and do not define or enlarge the claim of such possession. The party in possession in this case is not protected by the first section, because she had no muniment of title required by the statute purporting to convey a fee simple, but only a claim of a life estate. The party having the remainder in fee was never in possession, so that as against him no right of action had ever accrued to these complainants. It has accrued before possession taken, and as against these parties, they stand alone on their title derived from the will, which has been declared void. Having had no possession under it, the fee claimed by them is not aided by the possession of another who did not claim the fee at all. If such a result would follow we would have a fee simple estate, under a conveyance declared invalid, perfected by the possession of one who never claimed one nor had a conveyance purporting to convey such an estate. The possession, it is true, is under a will purporting to convey a fee ultimately, but not a fee to the party in possession—that estate has not yet come into possession.

As an additional argument in favor of this view, it would not be maintained that if the heirs in this case had brought suit against the widow, and recovered possession of this land, this judgment would have been

conclusive on the remaindermen.    The reason for this
is conclusive of the question.    It is because she did
not hold for them or their estate, and they could not
·be bound by the result of a litigation with the life-
tenant alone, to which they were not parties.    If this
be so, it inevitably follows that her possession was not
their possession, for if so they would be concluded by
the judgment.    Can she hold the estate for the re-
maindermen, and still their title be unaffected, when
this possession is divested by a judgment?    Can the
true owners be ousted of a valid title when they have
no right of action against the party who maintains
this title?    It would strain the law beyond all prin-
ciple to so hold, and that in favor of claimants under
a will judicially declared to have been fraudulently ob-
tained.    Unless it can be shown complainants had a
right to bring ejectment against the remaindermen or
some one holding for them, by which their claim could
be produced, then no statute of limitation could ever
run in their favor.    If a statute should so provide,
it would be void, as depriving a man of his property
without due process of law, and a construction of our
statutes involving such a result is equally subversive
of fundamental principles and unjustifiable.    As said
by Judge Cooley (Const. Lim., page 450,) "all limi-
tation laws, however, must proceed on the theory that
the party, by lapse of time and omission on his part,
has forfeited his right to assert his title at law."    And
on page 457, "all statutes of limitation also must pro-
ceed on the idea that the party has had full oppor-
tunity afforded him to try his right in the courts.    A

statute could not bar the existing right of claimants without affording this opportunity; if it should attempt to do so it would be no statute of limitation, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions."

These principles are axiomatic and are conclusive, it seems to us, unless it can be shown complainants had an action accrued to them to assert their title against these remaindermen, and have neglected to do so for seven years.    No one will be able to show this has been the case.

The principle maintained is sustained by the rule deduced from the decided cases in Wood on Statute of Limitations, page 583.    When treating of taking possession to make the bar, he says:    " So, too, the successive occupants must claim *through* their predecessors, and if they claim independently, the continuity is broken and each must stand on his own possession." The remainderman does not claim through the life-tenant, but after him, by an independent title.    That it is given by the same instrument does not change the relation.    The principle would be the same as if the life estate was conveyed by one instrument, the remainder by another.

The cases cited by Wood, note 1, *Johnson* v. *Liversedge*, 11 M. & W., 517, and *Hall* v. *Mousedale*, 16 M. & W., 689, adjudge the question the same way. In the first it was held the possession of the wife, having a life estate under a deed for her life, did not defeat or affect the right of one holding the estate of the husband, who was entitled by survivorship.    In the

other case it was held, that after the life estate has fallen in, the reversioner must enter upon the land within the statutory period. This is sustained by numerous cases. Why enter if the holding of the life-tenant was for him and his possession, thus perfecting the title in him?

But what is more conclusive still, is the fact that the life estate may be a good title as against the owner of the fee, while the remainder might be void. In that case, on the theory contested, the true owner would be barred of his title by the possession of a party he could not dispossess—the title of remainderman, though under a void instrument be rendered indefeasible, as the theory goes on the idea that possession of the life-tenant is the possession of the remainderman under the same instrument. This possession would be equally as effective in favor of a void remainder, with a valid life estate, as any other. This would be contrary to all the reason or analogies of our law.

The answer to the case of *Hanson* v. *Johnson*, 62 Md., 25, and the American as well as English cases, is that they are based on the Statute of 21st James I, chapter 16, by which the right of *entry* is barred in twenty years, and so a negative bar, and as an estoppel, prevents the recovery of the claimant. But our act of 1819, vests the fee simple affirmatively in a party claiming under a conveyance purporting to convey one, and no other case, and by section 5, the defensive right is given to the occupant. But in each case the right acquired by the possession is lim-

ited by the character of the instrument under which the party holds, and the estate vested is defined by it. If under a conveyance purporting to convey a fee simple, then he who so holds gets this estate—if less he gets that. If only a title bond, or other instrument purporting to convey a less estate, he gets what the instrument gives and no more. This difference seems to me clear, and is in strict accord with the opinion in the case from 9 Hum., *Bomar* v. *Stephens*. For these reasons I cannot yield to the authority of the cases referred to.

We do not perceive any equitable considerations in the case demanding any liberality in construction that shall enable parties under a will unduly obtained, declared void by a court, to hold and keep the property of the rightful heir. Such claimant should be held to his strict legal right, and no more, and demands no favor at the hands of this court. The result is, that as to the remainder interest, after the death of the widow, the title of these parties will be declared superior to that of the claimants of the remainder interest.

We need only say to the argument that these heirs were in by descent and tenants-in-common, and therefore as to the other land, could not hold adversely to the other heirs; that while the general rule is correctly stated, yet it is equally well settled that where the possession taken is in disavowal of the trust implied by law, and is open and notorious, the statute will run, and such is this case. See *King* v. *Rowan*, 10 Heis., 677; 1 Sneed, 286.

The widow has perfected her life estate by her adverse possession, and that only: as to the other lands actually held by the devisees under the will given to them, their title has been perfected by their possession. The small tract not so adversely held was correctly decreed to go to the heirs.

The next question is as to the right to recover the personal estate from the legatees under the supposed will. It appears, as we have said, that within a few months after probate of the will, the executors, together with the legatees, met and divided out, to the amount of $30,000, what was known as the money assets, consisting probably mostly of notes due Benjamin Brown, the widow retaining possession of her share of the personal property.

The defense to this recovery is the statute of limitations of three and six years. It is clear this time had long since elapsed before the contest of the will began. Is this a good defense as against the administrator of Benjamin Brown, who brought suit within a few months after his appointment? This precise question seems never to have been in judgment before this court, nor are we able to find any case in which it has been directly discussed or adadjudged, either in England or America.

It is too well established as the law of our State that the only party entitled to sue for and recover the personalty of an intestate is his personal representative, to need discussion. The general rule is and has always been, that a distributee cannot sue for and recover his distributive share directly, the

administrator alone having this right. It was held
by this court in *Thurman* v. *Shelton,* 10 Yer., 585,
that whoever gets possession of an intestate's prop-
erty can hold it against the distributee, but not against
the administrator or creditor, the latter having the
right to proceed against him as executor in his own
wrong, but the administrator sues in his own right as
legal owner. See the numerous cases in our State cited
in note to section 2201 of Thompson & Steger's Code.
See also 2 Hum., 565. It is equally well settled
that the statute does not operate until there is a party
in being capable of suing to enforce the right sought
to be set up by lapse of time: 10 Yer., 383; 5
Hum., 605.

It would seem to follow necessarily from these
uncontested principles that no statute of limitations
could interpose any obstacle to a recovery on the part
of the personal representative in this case, whose right
only accrued from and after the time of his appoint-
ment, and not before.

It has been suggested, however, that the rule sus-
tained by the authority of decision and text writers,
that the granting of probate and letters testamentary
is conclusive upon all parties acting under such pro-
bate, until the same is revoked by the court granting
it, or on appeal by some other court; that the prin-
ciple is based on the fact that the probate is the
judgment of a court of exclusive jurisdiction in our
State, as it is in England, as to personalty, when
granted by the ecclesiastical courts, and all acts done
under it protected by the judgment of the court.

This aspect of the case presents some nice and difficult questions, which we proceed to examine on authority and principle. It is seen that on the facts before us the question is between the parties taking as assumed legatees under the will and the distributees, entitled on intestacy being shown, after the will has been set aside. It may be conceded that as to all courts called on to construe the will, or enforce rights claimed under it, as to personalty, the probate by the court having jurisdiction is conclusive. "Probate of a will determines all questions of fraud, imposition, and undue influence in procuring the will, as well as the capacity of the testator: Jarmon on Wills, Vol. 1, 5 Am. Ed., 127, note 1, and authorities cited.

It is laid down as settled by authority, in Williams on Executors, Vol. 1, 486-8, that where the grant of letters testamentary or administration are void, as for want of jurisdiction in the court granting them, or if, he says, on concealment of a will, and a will afterward appear, the grant would be originally void, and all acts performed by the administrator under such letters would be equally void. The concealment of the will, we take it, meaning concealment by the party obtaining the letters. But if the grant were merely voidable, then another distinction arises between the case of a suit by citation, which is to countermand or revoke the former probate or former letters of administration, and an appeal, which is always to reverse a former sentence. In the case of an appeal all intermediate acts of the executor or

administrator are ineffectual, because the appeal suspends the former sentence, and on its reversal it is as if it had never existed: Side page, 490.

But if the suit be by citation, and the grant of administration be voidable only, as where granted to a party not next of kin, or on refusal of the executor who has before administered, all lawful acts done by the first administrator shall be valid as a *bona fide* sale or gift by him of the goods of the intestate: *Ibid*. But where the administrator sold or charged with a trust, *in trust for himself*, although the administration was revoked on a suit by citation, the assignment was decreed to be set aside, the property being held in equity for the administrator himself: *Ibid*, 491.

It seems, however, settled, that as between the rightful administrator or executor, even under a void probate, where he has sold the effects, the act of alienation, *if done* in due course of administration, shall not be void, that is, such acts as would be proper to be done by the rightful administrator, as payment of funeral expenses or debts which the administrator would be compellable to pay.

In illustration of the above principles, as showing the cases to which the rules apply, where there has been a *bona fide* payment to the executor or administrator of a debt due the estate, it will be a legal discharge to a debtor. The principle given on which this vests is, "that if the administrator or executor had brought his action to recover the debt, the debtor could not have controverted the title of the represen-

tative as long as the letters of administration or probate were unrepealed, and the debtor was not obliged to wait for a suit when he knew that no defense could be made to it": Williams on Executors, page 492.

These cases show that the principle cited covers all payment of debts made by the representative which the rightful representative would be compelled to pay, and all receipts of debts due the estate which he could compel the debtor to make, as well as all *bona fide* sales of property in regular course of administration, and in one case, it is said, even a gift of the property by an administrator. We do not think this last can be sustained on sound principle. It is carrying the logic of the right *jus disponendi* in the administrator too far to say that a volunteer who pays nothing for the property shall hold it as against an administrator, who has been deprived of it by the wrongful act of a party whose authority to act at all has been revoked. These principles, and their application, as shown in the cases referred to, we take to be sound.

But they do not meet the case now in hand. It is the case of legatees receiving the effects of the testator, it is true, by the assent of the executors appointed by the will, after probate in common form, but still not purchasers nor even donees of the property in any accurate sense from the executors.

It is laid down in Mr. Perkins' note to last edition of Jarman on Wills, Vol. 1, page 31, that "probate of a will is, however, operative merely as the

authenticated evidence, and not at all as the foundation of the title to the property disposed of by the will. The title passes to the devisee or legatee at the death of the testator, and the probate relates back to that time. For this he cites *Fuller ex parte*; 2 Story C. C., 327; 3 Fairf., 127; 3 New Hamp., 517; 9 Ohio, 96; 2 McLean R., 189.

The parties then do not hold their title in case of a will from the executor, but under the will. It is true, as said by this court in *Finch* v. *Rodgers,* 11' Hum., 563–4, as a general rule the assent of the executor is necessary to perfect the title of the legatee to a bequest of chattels, and without such assent possession of the chattels cannot be taken by the legatee. This is for the protection of the executor, upon whom the law devolves the personal estate for the payment of the debts of the deceased, and who is responsible to creditors to the extent of the whole personal estate. But, adds the court, "the title of the legatee is derived from the will, and is not ended by the assent of the executor, consequently such assent has only the effect of perfecting the title derived from the will." In other words, it is a release of the right of possession or claim of the executor to hold for payment of debts, and transfers the immediate right of possession to the legatee.

This being so, the assent of the executors was not a gift of the legacies received, did not by force of the assent carry the title as in a case of a sale or even gift of personalty of the estate, and therefore this act adds nothing to the title of the legatee. He

cannot claim it protected as an operative act convey-
ing the title by executors under a will regularly pro-
bated. His title stands under, and is derived from
the will alone, and his possession was taken under
it in pursuance of that, the executors yielding their
temporary right of possession in consideration of the
fact that the debts were few and ample assets to meet
them. That this conclusion is the true one is strength-
ened by considerations of great weight. Suppose the
case of a will fraudulently obtained, and the execu-
tors appointed relieved from giving security, and in-
solvent, they prove the will in common form, with-
out notice to distributees, who would be entitled to
contest. They may reside in another county or State.
The executors immediately proceed to assent to dis-
tribution, according to the will, of all the personalty,
as was done in this case (in perfect good faith, how-
ever, here), and the assumed legatee goes into posses-
sion. In the meantime the will is contested, and in
a year, or less time, is set aside for fraud or undue
influence. Shall the legatee hold his title good because
of these facts, on the ground of the assent of the
executors under a will duly probated? No one, it
seems, would so maintain, or if such a ruling were
made it would shock our sense of justice; yet, if the
contention be correct, that *all* acts of executors under
letters testamentary are valid, when assenting to the
receipt of a legacy by an assumed legatee, the result
would be precisely what is indicated. The legatee
would hold against the administrator representing cred-
itors and distributees, though the will should be set

aside the next month, for time is no element under this principle.

In view of these authorities and reasons we hold the acts of an executor in a case like the present, that will be effective, must be confined to strict matters of administration, such as the receipt or payment of debts, or in the case of a sale of the assets by an administrator, the *bona fide* purchaser would be protected and take a good title. Further than this neither sound policy nor reason will permit us to go.

The legatee then holding under the will, and the only party who could sue, the probate being conclusive until set aside, being a personal representative until the appointment of such representative, time could not run in favor of the legatee, it follows the lapse of time cannot save the claim of the defendant legatees in this case.

It cannot be maintained this is affected by the principle that the executors were trustees with the legal title, and the statute barring the right of the trustees, bars the right of the beneficiary. The executors were never trustees for the distributees, but only under the will for the legatees. The distributee could not sue, as the heir might, as we have seen in the case of land, while the probate remained. The reason why the statute in the case of land raised the bar was that the heir could sue at any time, the probate interposing no difficulty, and might contest the will in his action of ejectment, or under an ejectment bill in chancery have the validity of the will tested, on an issue made for that purpose. That reason fur-

nishes a conclusive answer to the statute in this case, because no such right of action existed as to the personalty, and none existing, on the principle that cuts the heir off in that case, the distributee comes in in this.

The case of *D'Arusement* v. *Jones*, 4 Lea, 252, goes farther than maintained in this case. These letters had been granted by the county court, after seven years' absence of the party, raising a presumption of death. The party returned ten or twelve years after leaving, and sued for and recovered money due her, paid by her debtors to the administrator, in fact a payment enforced by bill in chancery. I insisted that was wrong, but my brother judges overruled my view, and held the payment a nullity, and permitted a second recovery. It is true it was said the grant of administration was void, but it was in fact only avoided in that suit by proof of the fact that the party was alive, just as the will has been held void in this case by showing it was obtained by fraud. If this case stands, then the legatees cannot retain the money in this contest.

The question, however, must stand on one or the other of the following theories: First, that by the probate of the will in common form *all* the acts of the executors are valid, both in collection of debts, payment of same, and payment of the personalty to legatees; or second, that while this does not complete the title, yet it does give a defective title that is perfected in the claimant under the will within three or six years, the time for suing for property in an action of debt for money. We will examine a moment these theories. The latter, we may say, is the

19—VOL. 14.

principle on which the case of *Rodgers* v. *Minton,* 2
Hum., 180, is placed by the learned judge who de-
livered the opinion of the court.

The first theory cannot be maintained, either in the
light of the above case or on any sound principle,
when taken in connection with our statutory law on
the subject of probate and contest of wills. It gives
no play practically at all to the statutes of limita-
tions, for the act is valid, as done by the executor or
representative by virtue of the probate and his office,
and needs no time to aid it.

On this theory it were useless to allow a contest
of a will to be had within twenty years, or even
within three years, for practically it would amount to
a fruitless litigation in all cases of large estates, as
such suits can and will, in almost any case, be pro-
longed in our courts for a longer period than this,
as we see in the present case. It was pending
nearly four years after the contest commenced in
the circuit court. In the meantime, if the theory be
correct, the executor or representative might, as in this
case, within a short period after probate, not only
pay all debts, but distribute the surplus in money
and choses in action, and the right be gone. A con-
struction leading to such results would practically
nullify the right of the distributee to contest the
will at all, and give the holder under a will obtained
by fraud or undue influence every advantage. It may
be this will work, in most cases, in favor of the very
parties whose fraudulent devices have obtained the will,
thus offering liberal encouragement to the unscrupu-

lous. We must remember that while it is desirable that titles shall not be unsettled, it is equally desirable that such fraudulent practices should not succeed or be encouraged. That while our statutes of limitation are based in sound policy when applied in view of all the conditions and limitations annexed to them by our courts and text-writers, they were never intended to be made active instruments for the assistance of the fraudulent, greed-loving kinsman or stranger under a will. Besides, it is as much the law that a will may be contested within the period fixed by our decisions, as that under a proper state of facts the statute of limitations shall quiet a title. In view of all our law, the view that best carries out both policies is the one we have taken, that as to all matters of *pure* administration, such as would have to be done whether the will was or was not established, as collection and payment of debts, the acts of the officer *de facto* should be held valid, but as to the title of the devisee and legatee, he should stand on the strength of it, subject to the universal rule, that no statute would begin to run in his favor until a right of action accrued or existed by which the devisee or a personal representative could bring suit to enforce his right. In the case of realty that right existed at once, and so would continue for seven years, parties being *sui juris;* as to personalty from the time when a personal representative was appointed who could sue. As to innocent purchasers for value of specific property, they would hold it on settled principles of a court of equity long established in our jurisprudence.

The second theory is answered by the axiom in our jurisprudence that no statute of limitation can be made to run until a right of action accrues, and a person in being who can sue; at any rate, parties have the right to bring such person into being by appointment of an administrator. The term "cause of action," says Mr. Wait (Act. & Def., vol. 7, page 278,) "includes not only the right proper, but the existence of a person *by* or *against* whom process can issue." For which he cites *Conwell* v. *Morris*, 5 Harrison Del., 299; *Richards* v. *Maryland Insurance Company*, 8 Cr., 84. He says further : " It has accordingly been adjudged, that the statute of limitations does not commence to run against a representative of a deceased creditor upon an obligation incurred or debt becoming due after his decease, until administration granted upon his estate, there being no cause of action until there is a party capable of suing." Citing *Munay* v. *East India Company*, 5 Barn. & Adolp., 204; *Buclin* v. *Ford*, 5 Bart., 393; *Baker* v. *Baker*, 13 B. Mont., (Ky.,) 406; *Pery* v. *Jenkins*, 1 Myl. & Cr., 118, and other cases, page 278. It would hardly seem necessary to cite authorities in support of principles so obviously correct. In this case it is not questioned that the suit was brought in time by the administrator, nor that he was promptly appointed immediately on the termination of the contest as to the will.

It is unquestioned, also, that no administrator could be appointed until the will was set aside, and equally certain that no one could sue until such appointment. We are compelled to reverse all that has ever been

established on this subject in order to sustain the contention of defendants, as shown by the authorities cited, or else the statute cannot be a bar in favor of the fraudulent legatee in this case.   That is, we must hold that a right shall be barred when there was no one who could sue, and even farther, when by law no administrator could possibly have been appointed to sue, and where the distributee was powerless to sue for the money or personalty, because the probate of the will stood as an insuperable barrier, and then we must assume he was guilty of laches in suing within the time actually allowed by law, and these incongruities were overlooked by the learned judge in the case of *Rodgers* v. *Winton,* or probably his attention not called to them in any way.   We but add, as to that opinion, that it is not reasoned at all—no authority is cited to support the conclusion announced, or any reason given on which to rest it.   It is one of the impulsive, off-hand opinions of that great and able judge, Turley, whose weakness was, that occasionally he took a position on first view, but whose strength was always shown, if pressed, in maintaining even an erroneous view, with an ingenuity, learning and ability that few men ever equalled.   In view of the considerations presented—even if that opinion could not be distinguished from the present case—it is unsound and not law, as applicable to the present case.   In this view, the administrator was entitled to recover the personal estate from the assumed legatees, and was bound to sue for the same as he has done.   When obtained he is to make distribution of the same, which should be

completed in this case, all parties being before the court and the bill filed for this purpose.

It is said, however, he has acquiesced in the decree below, and has not appealed. This cannot defeat the right of the distributees to recover, or prosecute their writ of error. If he had refused to sue, or been estopped from suing, then the distributees might have sued him, and a wrongful possessor of the personalty, or had he refused to do so, the same might have been done.

In this case, his refusal to appeal gives the distributees either the right, if need be, to use his name to enforce their rights, or their writ of error may be held to bring him and all parties necessary for a decree before this court. His non-action cannot be allowed to prejudice them in such a case. It follows. that these complainants in error are entitled also to an account of their share of the personalty, and no statute of limitations affects their claim.

We need only notice one other point made in argument, and that is, that as to the land, the fraud in obtaining the will prevents the operation of the statute. It is sufficient to say on this question, that no case is charged in the bill bringing this rule of law into play. The exception to the general rule based on fraud, is where the cause of action is concealed by fraud from the parties having the right: Meigs Dig., sec. 1866, and cases. It is only alleged that the will was obtained by fraud, but not that the right of the parties was concealed by fraud.